**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CELESTA WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:25-cv-00564** |
| | ) | |
| **MAGNOLIA BANK, INC. et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM OPINION

Before the Court is the Magistrate Judge's Report and Recommendation ("R&R") (Doc. No. 99), testing whether Celesta Williams's third amended complaint (Doc. No. 84) properly states claims against multiple defendants. The R&R recommends that the Court: grant defendant Village Capital & Investment LLC's motion to dismiss (Doc. No. 86); grant in part and deny in part defendants Magnolia Bank, Inc. and Dimitriy Bleynis's (collectively, "Magnolia Defendants" or "Magnolia")[1] joint motion to dismiss (Doc. No. 91); and grant in part and deny in part defendants MidFirst Bank and Midland Mortgage Company's (collectively, "MidFirst Defendants" or "MidFirst") motion to dismiss (Doc. No. 95). As a result, the R&R recommends allowing the fraudulent inducement and Tennessee Consumer Protection Act claims to proceed against the Magnolia Defendants and the wrongful foreclosure claim to proceed against the MidFirst Defendants. MidFirst and Magnolia object; Williams does not. The Court will accept in part and reject in part the R&R and dismiss this case.

[1] This opinion may refer to "Magnolia" or "MidFirst" in the singular, even though the Court recognizes that each consists of multiple defendants.

## I. Legal Standard

Pursuant to Federal Rule of Civil Procedure 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." "The failure to properly, specifically, and timely object to a report and recommendation releases the Court from its duty to independently review the matter." Lawhorn v. Buy Buy Baby, Inc., 2021 WL 1063075, at *1 (M.D. Tenn. Mar. 19, 2021).

## II. Background

The Court will not repeat the entire factual background and procedural history of this case that was set forth in the thirty-three page R&R. (See Doc. No. 99 at 1–6). The objecting parties principally disagree with the Magistrate Judge's legal conclusions, not findings of fact.

Construed liberally, and as relevant to the surviving claims, Williams alleges that Magnolia Bank, acting through its loan officer Dimitriy Bleynis, duped her into accepting a loan that she could not pay off. In refinancing her mortgage, she requested a modest quarter-million-dollar loan but (somehow) wound up with a loan of over $400,000. (Doc. No. 84 at 5) ("The final loan amount was $401,912, substantially more than the approximately $268,000 Plaintiff requested.") Had she "known the loan amount would increase to $401,912 and the payment would increase as it did, she would not have proceeded with closing." (Id.) Williams alleges injury in the form of higher monthly payments, emotional distress, and exposure to foreclosure of her mortgaged home. (Id. at 9–16).

These allegations of fraud sit rather uncomfortably next to the loan documents Williams submitted with her original complaint. (Doc. No. 1-10 at 2–17). Buried in over 100 pages of exhibits, they show that Williams received an initial home-equity loan estimate of $264,550 on December 7, 2023. (Id. at 2). Williams signed and acknowledged receipt of this estimate. (Id. at 4). After her home was appraised at a higher value, Magnolia sent Williams a second loan estimate

of $401,912 on February 16, 2024. (Id. at 4). Williams likewise acknowledged the second estimate with her signature. (Id. at 8). Finally, Magnolia sent Williams a "Closing Disclosure" and "Note" on March 18, 2024, reflecting the same $401,912 loan amount provided with her second estimate. (Id. at 9–17). Williams acknowledged receipt of the Closing Disclosure, signed the Note, and closed on the $401,912 loan. (Id. at 13, 17). Now, Williams alleges that the represented $264,550 loan amount, when compared to the $401,912 loan she received, amounts to fraud. (Doc. No. 84 at 4–5).

In addition to fraud based on the purported loan-amount and monthly-payment discrepancy, Williams alleges she discovered other material misrepresentations and injuries after closing. Williams had applied for "an FHA cash-out refinance loan[.]" (Doc. No. 84 at 4). About a year after taking the loan, however, she became convinced[2] that the loan she received, from its inception, was not eligible for the Federal Housing Administration's "cash-out-refinance" program. (Doc. No. 84 at 5–6). The third amended complaint does not explain why FHA-eligibility is important to Williams. Attempting to understand and fairly construe her pro se allegations, an ever-patient Magistrate Judge researched and found that FHA programs, like the one Williams references, provide insurance to certain lenders in the event that a borrower defaults. (Doc. No. 99 at 2). The FHA also requires participating lenders to certify that the loans they endorse and underwrite meet FHA-eligibility requirements. (Id.) The FHA-program itself makes more sense based on these details, but Williams's stake in it is still far from clear.

[2] At some point in 2024 or 2025, Williams read parts of the Housing and Urban Development Handbook. (Doc. No. 84 at 6). This Handbook led her to believe that, because she had "missed" a mortgage payment in December 2023, she was not eligible for the FHA-backed loan that she eventually closed on in March 2024. (Id. at 4–6). Williams made that payment up in January 2024. (Id. at 4); (Doc. No 1-6 at 2). The Court need not decide whether Williams's late mortgage payment rendered her ineligible for an FHA-backed loan; however, her allegations on eligibility are legal conclusions that are not entitled to a presumption of truth.

Finally, beyond the purported loan-amount discrepancy and FHA-ineligibility, Williams takes issue with the Note being transferred from Magnolia to Village Capital and then to MidFirst. (Doc. No. 84 at 5–6). By purchasing and servicing the FHA-ineligible loan, she believes they are also liable for the "origination fraud." (Id. at 7). Furthermore, MidFirst has retained "foreclosure counsel," "[f]oreclosure activity is ongoing and imminent[,]" and this foreclosure is allegedly wrongful due to the underlying origination fraud. (Id. at 10, 14).

According to Williams, Magnolia's false representations, combined with the allegedly complicit participation of the other Defendants, constitutes various species of fraud.

## III. MidFirst Objections

MidFirst objects to the Magistrate Judge's recommendation that Williams's wrongful foreclosure claim should proceed. According to MidFirst, this is legal error because no such claim exists under Tennessee law. The R&R correctly found that MidFirst "made no substantive arguments" under Rule 12(b)(6) on this purported claim. (See Doc. No. 99). Ordinarily, the Court would consider MidFirst's newfound arguments forfeited because they were not first presented to the Magistrate Judge. See AES-Apex Emp. Servs., Inc. v. Rotondo, 924 F.3d 857, 867 (6th Cir. 2019). However, in the interest of justice, and because all other claims will be dismissed, the Court exercises its discretion in considering MidFirst's objection and finds that it has merit.

Sitting in diversity,[3] the substantive law of Tennessee controls. Tennessee law does not recognize an independent cause of action for wrongful foreclosure. See Case v. Wilmington Tr.,

[3] Although Magnolia Bank is alleged to be a Tennessee corporation, (Doc. No. 84 at 2), its corporate disclosure statement puts its headquarters and state of incorporation in Kentucky. (Doc. No. 23 at 1). Williams also initially alleged a federal claim against Defendants for violating the Housing and Urban Development Handbook. There is no "legal substance" or "arguable basis in the law" for this purported claim that would confer jurisdiction under 28 U.S.C. § 1331. See Metro Hydroelectric Co., LLC v. Metro Parks, 541 F.3d 605, 611 (6th Cir. 2008). Williams has since conceded as much and argues that the purported Handbook violations merely constitute evidence of her other claims. (See Doc. No. 99 at 27–28).

N.A., 703 S.W.3d 274, 295 (Tenn. 2024). "There can be breaches of contract, torts, and statutory causes of action based on allegations of 'wrongful foreclosure,' but the use of that terminology to describe a claim does not transform it into its own separate common law cause of action." Id. Responding to this newly cited case by the Tennessee Supreme Court, Williams now asks the Court to construe the wrongful foreclosure claim as a claim for fraudulent inducement. (Doc. No. 104 at 5). The Court cannot do so because Williams already alleged that claim, and the R&R was correct in finding that she failed to attribute any fraudulent conduct to MidFirst. Indeed, for the reasons discussed below, she has not alleged fraud as to any other Defendant.

## IV. Magnolia Objections

Magnolia raises two related objections: (1) the Magistrate Judge applied an overly liberal construction of the complaint and (2) the Magistrate Judge did not require Williams to plead fraud with particularity.

### A. Liberal Construction

Magnolia objects to the Magistrate Judge's overbroad reading of the third amended complaint in conjunction with, and as a supplement to, William's prior amendments to the complaint. (Doc. No. 101 at 2–4, 6–10). In Magnolia's view, this "traveled beyond the limits of the liberal *pro se* pleading standard" and contravened the general rule that an amendment replaces a prior pleading. Id. at 2.

The Court finds no error here. "Although an amended complaint ordinarily supersedes its predecessors, litigants—especially *pro se* litigants—are free to keep old allegations by reference." Hamilton v. Campbell, 2026 WL 2655085, at *4 (W.D. Ky. Sept. 9, 2026) (citing Fed. R. Civ. P. 10(c)). Unless local court rules say otherwise, a party may clearly indicate that the latter pleading is intended to "supplement, rather than supersede, the original pleading," Clark v. Johnston, 413 F. App'x 804, 811–12 (6th Cir. 2011), and this indication may be "based on the structure and

nature of the pleadings[.]" L.H. v. Red Roof Inn, Inc., 2025 WL 4666450, at *2 (W.D. Ky. Nov. 3, 2025).

Here, recognizing Williams's pro se status, the Magistrate Judge liberally construed her pleadings "where her original allegations are necessary to understand her [third amended complaint.]" (Doc. No. 99 at 8). Indeed, without noticing her prior pleadings and exhibits, the Court would be left entirely in the dark on pivotal matters—such as the loan documentation that forms the backbone of this dispute. (See Doc. No. 1–10). The R&R did not revive old claims that Williams left out of her latest complaint, cf. Royal Canin U. S. A., Inc. v. Wullschleger, 604 U.S. 22, 35 (2025) (discussing withdrawn federal claim that affected jurisdiction), nor does Magnolia point to any "sham" allegations that the R&R wrongly credited. See Bradley v. Chiron Corp., 136 F.3d 1317, 1324–25 (Fed. Cir. 1998) (discussing "sham" amendment that diametrically opposed original complaint).

Judges necessarily exercise some degree of discretion in parsing pro se pleadings, see Hamilton, 2026 WL 2655085, at *4, construing them liberally "so as to do justice." Fed. R. Civ. P. 8(e); see also Fed. R. Civ. P. 10(c) (permitting incorporation by reference). Notwithstanding Magnolia's objections to the contrary, the R&R's citations support this principle. (Doc. No. 99 at 8) (citing, e.g., Fuchs v. Specialtycare, Inc., WL 2382931, at *5 n.5 (M.D. Tenn. Aug. 15, 2025). And, as it turns out, considering the exhibits to Williams's original complaint completely undermines her case. See Fuchs, 2025 WL 2382931, at *5 n.5.

B. Rule 9(b)

Magnolia next objects that Williams failed to plead her fraud claims, including the reliance and injury elements, with particularity. (Doc. No. 101 at 10–12); (see also Doc. No. 91 at 4–5). The Court applies Tennessee law for the elements of fraud but Rule 9(b) for special pleading requirements. Hagen v. U-Haul Co. of Tennessee, 613 F. Supp. 2d 986, 996 (W.D. Tenn. 2009).

In requiring plaintiffs to plead fraudulent behavior with particularity, Rule 9(b) "serves to put defendants on notice of the conduct complained of by the plaintiff to ensure that they are provided sufficient information to formulate a defense." Id. (citing Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 679 (6th Cir.1988)). "The Sixth Circuit interprets the particularity requirement liberally, requiring a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." Id. (citing Coffey v. Foamex L.P., 2 F.3d 157, 162 (6th Cir.1993) (internal quotations and citations omitted)).

Rule 9(b) must also be read in harmony with Rule 8, which requires only a "'short and plain statement of the claim[,]'" see Michaels Bldg. Co., 848 F.2d at 679 (quoting Fed. R. Civ. P. 8), as well as the liberal pleading rule. However, "a district court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions." Sanderson v. HCA–The Healthcare Co., 447 F.3d 873, 876 (6th Cir.2006).

With these procedural legal standards in mind, the Court turns to fraudulent inducement and whether Williams pleads this claim under Tennessee law, which requires:

> (1) the defendant made a false statement concerning a fact material to the transaction, (2) with knowledge of the statement's falsity or utter disregard for its truth, (3) with the intent of inducing reliance on the statement, (4) the statement was reasonably relied upon, and (5) an injury resulted from this reliance.

Wigley v. Am. Equity Mortg., 2016 WL 866359, at *3 (W.D. Tenn. Mar. 3, 2016) (citing Lowe v. Gulf Coast Dev., Inc., 1991 WL 220576, at *7 (Tenn. Ct. App. Nov. 1, 1991)) (internal citations omitted).

*i. False Statements of Material Fact*

Williams alleges four misrepresentations that Magnolia Bank's employee, Dmitriy Bleynis, made to her during the loan application process. (See Doc. No. 84 at 4, 10–11). They are

that: (1) "the loan could be approved despite denials by other lenders;" (2) "Plaintiff would be refinanced into better terms within six months;" (3) "Plaintiff's monthly payments would 'go back down' after an initial period;" and (4) "the loan satisfied all applicable requirements." (Id. at 10–11). She alleges that these representations "were false when made" and why Magnolia knew, or should have known, they were false at that time. (Id.)

To "satisfy the first element of a claim for fraudulent inducement, the statement must have been either factually false or a false promise when that statement was *made*—the fact that [a defendant] was eventually unable to carry out its contractual obligations to Plaintiff" does not satisfy this element. Metro. Gov't of Nashville & Davidson Cnty., Tennessee v. Youth Opportunity Invs., LLC, 2026 WL 2018288, at *10 (M.D. Tenn. July 13, 2026) (emphasis in original). A false promise must have been "made without the present intent to perform." Wigley, 1991 WL 220576, at *7. Some of Magnolia's representations clearly involve promises of (some unspecified actor's) future performance, and Williams does not allege that they were made without the "present intent to perform." There are no specific arguments or objections on these grounds.

Williams also does not identify any Magnolia promise that was specifically in relation to a cash-out-refinance loan, or why an FHA-backed loan was material. "While a plaintiff need not include precise quotations of the misrepresentations that allegedly constituted fraud, providing the specific factual assertions underlying the fraud is helpful in affording the defendants requisite notice." Hagen v. U-Haul Co. of Tennessee, 613 F. Supp. 2d 986, 996 (W.D. Tenn. 2009) (citing Michaels Bldg. Co., 848 F.2d at 679)). Magnolia's motion to dismiss did not articulate materiality concerns, nor has a specific objection been raised on this basis.

Williams seems to rely on some of Magnolia's statements that were allegedly contained in emails and text messages in December 2023, (Doc. No. 84 at 4), but Williams does not say where,

when, or how others were communicated. See Wigley, 1991 WL 220576, at *7. Again, Magnolia does not object.

Accordingly, because of Magnolia's failure to raise specific objections, the Court finds that the first element of fraudulent inducement has been satisfied.

*ii. Injury and Reliance*

The third amended complaint alleges that "[p]laintiff justifiably relied on [the above-cited] representations in deciding to proceed with the loan application and closing." (Doc. No. 84 at 4, 10–11). Other than this and similarly terse statements, Williams offers nothing else about her reliance or how it was justified. In similar fashion, she alleges injury in the form of "entry into an ineligible and unaffordable loan, loss of business income, emotional distress, and exposure to foreclosure." (Id. at 11).

Magnolia's motion to dismiss argued (in conclusory fashion, ironically) that Williams made only conclusory allegations of reliance and injury. (Doc. No. 91 at 5). It could have, for example, cited the loan documents at issue. Nonetheless, Magnolia specifically objects to the Magistrate Judge's conclusion that the injury and reliance elements were satisfied. (Doc. No. 101 at 10–14). Reviewing the record de novo, the Court agrees with Magnolia and will dismiss this claim.

Even with elements that may be alleged generally under Rule 9(b), labels and conclusions will not do. Hollands, 2025 WL 1811517, at *6. "Conclusory statements of reliance are not sufficient to explain with particularity how she detrimentally relied on the alleged" misrepresentations, Evans v. Pearson Enters., Inc., 434 F.3d 839, 852–53 (6th Cir. 2006), or how she was damaged, Harris v. Ocwen Loan Servicing, 2022 WL 4828209, at *4 (6th Cir. Feb. 7,

2022). By failing to describe how the misrepresentations caused her injury, or caused her to change her position or take different action, Williams fails to plead injury and reliance. Id. at *3–4.

Considering possible inferences in her favor uncovers no justified or reasonable reliance either. Tennessee law recognizes factors for courts to use in determining whether reliance was reasonable, including the "availability of relevant information" and "the opportunity to discover the fraud." Noblitt v. Bluegreen Vacations Unlimited, Inc., 2019 WL 7290474, at *10 (E.D. Tenn. Mar. 20, 2019) (internal quotations and citations omitted). Sometime after closing on the loan, Williams read parts of the Housing and Urban Development Handbook that led her to believe that her loan was not actually FHA eligible and that she had somehow been defrauded. (Doc. No. 84 at 6). Why FHA-eligibility is material, Williams does not say, but regardless, the FHA-eligibility requirements were clearly available to her prior to closing, and she had an opportunity to discover them during the more than three months that she was proceeding with the loan-application process.

Considering the even less demanding standard of "justified" reliance, Williams fares no better. "The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him." Restatement (Second) of Torts § 541 (1977). Falsity would have been obvious here. Even a "'cursory glance' of the 'face' of the [loan] agreement" she signed in March 2024 would have alerted Williams of Magnolia's purported misrepresentations. Noblitt, 2019 WL 7290474 at *11 (citing id. § 540 cmt. a).

Williams alleges that Magnolia told her (at some time) that she could take out a $268,000 loan, and this statement was false because she actually closed on a $401,912 loan. (Doc. No. 84 at 5). The Closing Disclosure Williams submitted with her original complaint shows a "Loan Amount" of $401,912. (Doc. No. 1-10 at 9–14). This amount is reflected at the top of the front page in the largest font on that page. Id. at 9. Williams acknowledged receipt with her signature.

Id. at 14.[4] The Note shows this same information on the first page with the loan amount, interest rate, and monthly payment terms in bold-faced font. Id. at 15. Williams's signature appears on the third and final page. Id. at 17. Williams cannot claim reasonable (or even justified) reliance on Magnolia's purported statements promising a smaller loan amount, or lower monthly payments, when a "cursory glance" at the bolded, large-font, front-page, plain-English terms of the documents she executed provided the agreed loan amount and monthly payments.

As to the final element, and in responding to Magnolia's objections, Williams clarifies that her "injury is the difference between what was represented and what was delivered, plus the consequential damages flowing from being trapped in a loan allegedly different from what was represented." (Doc. No. 103 at 11). Viewing her complaints together, as Williams agrees is proper (see id. at 6–10), she has not alleged an injury—with particularity or otherwise.

Williams says she entered into an "ineligible and unaffordable loan," (Doc. No. 84 at 11), but she does not dispute that she executed the "unaffordable loan" agreement. Other than her belief that the loan is FHA ineligible, and perhaps in the "emotional distress" stemming from that belief, she has not articulated how this purported ineligibility caused her injury. The R&R found that FHA programs, like the one at issue here, provide insurance to *lenders* when a low-to-moderate income borrower defaults. (Doc. No. 99 at 2). No party disputes that finding, and the only apparent injury that might result from the loan not being FHA-backed would be to certain Defendant-lenders—not to Williams, the borrower. Her allegations of "loss of business income, emotional distress, and exposure to foreclosure" are conclusory, speculative, and unsupportable.

---

[4] Also on the front page, the disclosure states what her monthly payments would be and that the "loan type" was "FHA[.]" Id. at 9. The Note also includes these terms on the front page. Id. at 15, 17.

The loan documents show that the "unaffordable loan" Williams received was the one she accepted, and to the extent she tells a different story, the documentation controls. See Fuchs, 2025 WL 2382931, at *5 n.5. "Federal courts have not hesitated to dismiss lawsuits by *pro se* litigants challenging foreclosures" for failure to comply with Rule 8 or 9(b). See Price v. ReconTrust Co., 2013 WL 12284475, at *4 (W.D. Tenn. Feb. 19, 2013) (collecting cases). Because Williams failed to plead injury and reliance under either Rule, the Court will not accept the R&R's findings and conclusions on fraudulent inducement and will dismiss this claim.

## V. Tennessee Consumer Protection Act ("TCPA") Claim

"Ascertainable loss" is one element of a TCPA claim. See Am. Serv. Grp., Inc. v. Zurich Am. Ins. Co., 2011 WL 1884164, at *4 (M.D. Tenn. May 17, 2011). For reasons just discussed, Williams fails to allege any loss or injury. Accordingly, the Court will vacate the R&R's findings and conclusions on this claim and dismiss it.

## VI. Conclusion

The R&R will be approved and adopted in part, rejected in part, and this action will be dismissed with prejudice. Allowing a fourth amended complaint would be futile. Williams has had ample opportunity to cure deficiencies through multiple amendments. See Foman v. Davis, 371 U.S. 178, 182 (1962).

An appropriate order will enter.

WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE